## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE:                                    CASE NO.: 6:21-bk-02101-LVV
                                                        CHAPTER 7

AAA Real Estate Investment Services, LLC,
    Debtor.

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

### NOTICE OF OPPORTUNITY TO
### OBJECT AND REQUEST FOR HEARING

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 and serve a copy on the movant's attorney, Attorney for Secured Creditor, at Robertson, Anschutz & Schneid, Crane & Partners, PLLC, 6409 Congress Ave., Suite 100, Boca Raton, FL 33487, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Secured Creditor, NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for U.S. Bank, National Association , Not in its Individual Capacity, but Solely as Trustee for Fidelity & Guaranty Life Mortgage Trust 2018-1, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor(s), AAA Real Estate Investment Services, LLC, filed a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code on May 5, 2021. An order converting the case to a case under Chapter 7 was entered on July 21, 2021.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. **§** 1334, 11 U.S.C. **§** 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. Secured Creditor hereby waives the requirements of 11 U.S.C. § 362(e). The automatic stay of any act against property of the estate under § 362(a) shall continue until this Court orders or the stay is otherwise terminated by operation of law.

4. On October 24, 2019, Debtor(s) executed and delivered a Promissory Note ("Note") and a Mortgage ("Mortgage") securing payment of the Note in the amount of $138,000.00 to Optimus Capital Inc., a California corporation. The Mortgage was recorded on November 6, 2019 in Book 11032 at Page 2134-2145 of the Public Records of Polk County, Florida. The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A." The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

5. Secured Creditor is the holder of the note ("noteholder")**,** and is either the original mortgagee, beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to noteholder or has been duly endorsed.

6. The mortgage provides Secured Creditor a lien on the real property located at 1160 E Edgewood Dr, Lakeland, FL 33803, in Polk County, and legally described as stated in the

mortgage attached in Composite Exhibit "A."

7. The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since November 1, 2020.

8. The appraised value of the property is $114,347.00.  See Exhibit "B" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

9. Based upon the Debtor(s)' schedules, the Debtor has not filed Schedule C nor Statement of Intentions pertaining to said property; therefore, the treatment of the subject property is unclear.  The Trustee has not abandoned the property.

10. Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

11. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

12. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral.  The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the

Debtor's assets.

13. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

14. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage. Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

15. A Proposed Order accompanies this Motion. See Exhibit "C" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

Date: August 23, 2021

<div style="margin-left:40%">

Robertson, Anschutz, Schneid, Crane & Partners, PLLC
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/ Christopher P. Salamone
Christopher P. Salamone, Esquire
Florida Bar Number 75951
Email: csalamone@raslg.com

</div>

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 23, 2021, I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

AAA Real Estate Investment Services, LLC
1085 W. Morse Blvd.
Suite 110
Winter Park, FL 32789

Kenneth D Herron, Jr
Herron Hill Law Group, PLLC
135 West Central Boulevard, Suite 480
Orlando, FL 32801

Jerrett M McConnell
McConnell Law Group, P.A.
6100 Greenland Road, Unit 603
Jacksonville, FL 32258

Richard B Webber
Post Office Box 3000
Orlando, FL 32802

United States Trustee - ORL
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

<div style="margin-left:40%">

Robertson, Anschutz, Schneid, Crane & Partners, PLLC
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/ Christopher P. Salamone
Christopher P. Salamone, Esquire
Florida Bar Number 75951
Email: csalamone@raslg.com

</div>

**COMPOSITE EXHIBIT "A"**

## NOTE

$138,000.00                                                                                                            Polk County, FL

### PROPERTY ADDRESS: 1160 E Edgewood Dr, Lakeland, FL 33803

DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Note and/or the corresponding Loan Documents are defined below.

(A)    "**Borrower**" is AAA REAL ESTATE INVESTMENT SERVICES LLC, a Florida limited liability company. Borrower is the mortgagor under the Security Instrument(s) (as hereinafter defined).

(B)    "**Lender**" is OPTIMUS CAPITAL, INC., a California corporation, its successors and assigns. Lender's address is 1545 River Park Dr, Suite 300, Sacramento, CA 95815. Lender is the mortgagee under the Security Instrument(s).

(C)    "**Loan**" means the debt evidenced by the Note (as hereinafter defined), plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D)    "**Loan Documents**" means collectively the Loan Agreement (as hereinafter defined), Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(E)    "**Note**" means this promissory note signed by Borrower and dated October 24, 2019. This Note states that Borrower owes Lender One Hundred Thirty Eight Thousand and 0/100 Dollars (U.S. $138,000.00) and any additional amounts advanced pursuant to the Loan Documents, plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than November 1, 2020 (the "**Maturity Date**").

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $138,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.    INTEREST

Interest will be charged on unpaid principal, including protective or future advances as is advanced pursuant to the Loan Documents, until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.250 %, computed on the basis of a three hundred sixty (360) day

year consisting of twelve (12) thirty (30) day months. Interest commences on the day the lender's funds are placed in escrow. I will pay interest on the full amount of the unpaid principal of this Note even though the Lender may hold some of my cash or other property as collateral for repayment and even if I have prepaid payments in accordance with paragraph 3(A). For the avoidance of doubt, I understand that interest will accrue on the entire principal balance of the Loan, including portions of the Loan not yet advanced by Lender.

The interest rate required by this Section 2 is the rate I will pay before any default. If I default, the above rate shall, at the option of Lender without notice, increase to 16.000 % or the maximum rate permitted under law, whichever is less, and remain at that rate until all defaults are fully cured (the "Default Rate"). Lender and I agree that the Default Rate has been duly and adequately negotiated, and is fair and reasonable considering the costs, burdens, and other impairments foreseeably caused by, or resulting from, events of default under the Loan Documents.

## 3.   PAYMENTS

### (A)   Time and Place of Payments

I will pay all interest on this Note from the date of funding through the end of that month at loan closing. Thereafter I will make monthly payments on the first day of each month during the term of this Note starting with the "First Payment Date" of December 1, 2019. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date.

I will make my monthly payments payable to FCI LENDER SERVICES, INC. at P.O. Box 27370, Anaheim, CA 92809 or at a different place if required by the Note Holder. I agree to accept payment billings by email.

If I have prepaid payments when the loan was funded, Lender may retain those payments as earned in full and Lender will note in its records that the period covered by the prepaid payments has been paid as agreed. Prepaid payments shall not be applied to principal. If I repay the loan within this period, any unused prepaid funds will be credited on the payoff.

### (B)   Amount of Monthly Payments

My monthly interest payment ("Monthly Interest Payment") will be in the amount of U.S. $1,063.75.

### (C)   Application of Payments.

At Lender's sole discretion, my payments under this Note will be applied first to any late charges, fees or penalties then due, next to interest due and finally to unpaid principal. A payment will be deemed made when received at the payment address in subparagraph (A) above or at such other payment address as the Note Holder may designate from time to time.

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due subject to the Prepayment Premium (as hereinafter defined), if applicable. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. I may only make one Prepayment of Principal per month.

On the date on which a Prepayment, voluntary or mandatory, is made (including any amounts collected by Note Holder after a default), I shall pay to Note Holder (A) all accrued and unpaid interest on the amount of Principal being prepaid through and including the date of such Prepayment and (B) a prepayment premium equal to $0.00 (such amount being equal to zero (0) Monthly Interest Payments), reduced by any Monthly Interest Payment(s) previously received by Lender (the "Prepayment Premium"). Notwithstanding the foregoing, no Prepayment Premium shall be payable on a Prepayment that is required to be made as a result of a casualty to or the taking by eminent domain of the Property. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. Prepayments shall be credited to interest and Principal as of the last day of the month in which the same were received, unless payment in full is made.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ten (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the late charge will be ten percent (10.00%) of my overdue payment of principal and interest or one-hundred dollars ($100), whichever is more and I agree that such charge is a reasonable estimate of the fair compensation for the loss and damages that Note Holder will suffer for such late payment. I will pay this late charge promptly but only once on each late payment.

### (B)    Default

If I do not pay the full amount of each monthly payment on the date it is due or the amount due on the Maturity Date, I will be in default.

### (C)    Notice of Default and Acceleration

If I am in default and such default is then continuing, the full amount of Principal which has not been paid, any accrued interest, all other amounts payable under this Note and any other Loan Documents, shall at once become due and payable, at the option of the Note Holder, without any prior notice to me (except if notice is required by applicable law or the Security Instrument, then after such notice).

**(D)     No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)     Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, but are not limited to, reasonable attorneys' fees, inspection fees, appraisal fees, returned check fees and other out of pocket costs.

## 7.     GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at 1085 Morse Blvd #110, Winter Park, FL 32789 or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.     OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.     WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment, Notice of Dishonor and Protest. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder

to give notice to other persons that amounts due have not been paid. "Protest" means the right to obtain an official certification of nonpayment.

I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER.    I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER.

I acknowledge that prepayment of this Note may result in Note Holder's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. I, therefore, agree to pay the Prepayment Premium as described above, if any Principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Property securing the loan giving the Note Holder the right to accelerate the maturity of this Note as provided in the Security Instrument).

## 10.    SECURED NOTE

In addition to the protections given to the Note Holder under this Note, this Note is secured by that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing against the Property (the "Security Instrument"), dated the same date as this Note.  The Security Instrument protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note, and in the event of default by me under this Note, the Security Instrument or other Loan Documents, Note Holder may have the right to exercise certain remedies including, without limitation, foreclosure of my interest in the Property and/or requiring me to make immediate payment in full of all amounts I owe under this Note.

## 11.    INDEMNIFIED TAXES.

Any payments by me or on account of any of my obligations under any Loan Document shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the sum payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Note Holder receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Note Holder.  I shall promptly indemnify Note Holder for all such non-excluded taxes (including interest and additions to tax) and related expenses.  I shall promptly deliver evidence satisfactory to Note Holder of any payments made pursuant to this Section 11.  I shall also pay all documentary, recording, filing or similar taxes that arise with respect to any of the Loan Documents.

## 12.    USE OF NOTE PROCEEDS.

I, the Borrower, represent to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock

or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.

**13.    LOAN AGREEMENT.**

The loan evidenced by this Note is subject to that certain Loan Agreement dated October 24, 2019 (the "Loan Agreement"), the terms of which are incorporated herein by this reference.

**14.    CHOICE OF LAW.**

Florida law shall exclusively govern the interpretation and enforcement of this Note.

**15.    NOTICE TO BORROWER.**

DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.  ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS NOTE PROVIDES FOR A BALLOON PAYMENT WHICH WILL BE DUE ON THE DATE SPECIFIED IN PARAGRAPH 3 ABOVE, WHETHER OR NOT YOU HAVE OBTAINED A LOAN TO REPAY THIS LOAN.  YOU MAY NOT RELY UPON ANY VERBAL ASSURANCES OR AGREEMENTS BY ANY PERSONNEL OF NOTE HOLDER OR ANY MORTGAGE BROKER THAT THEY HAVE OR WILL OBTAIN OR ARRANGE A REPLACEMENT LOAN FOR YOU.  OBTAINING A REPLACEMENT LOAN IS YOUR RESPONSIBILITY.

**16.    DOCUMENTARY TAX.**

The state documentary tax due on this Note has been paid on the Security Instrument securing this indebtedness.

**17.    TIME.**

Time is of the essence in this Note.

**18.    USURY.**

It is the intent of Lender and Borrower in the execution of this Note, and all other instruments now or hereafter securing this Note or executed in connection therewith or under any other written or oral agreement by Borrower in favor of Lender to contract in strict compliance with applicable usury law.

**19.    SEVERABILITY.**

Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Note shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

[SIGNATURES BEGIN ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the undersigned Borrower has executed this Note as of the date first written above.

**BORROWER:**

AAA REAL ESTATE INVESTMENT
SERVICES LLC,
a Florida limited liability company

By: _____
Name:   Camilo Mendoza
Title:    Member


**BY INITIALING BELOW, BORROWER UNDERSTANDS AND AGREES TO THE WAIVERS IN SECTION 9 ("WAIVERS").**


Borrower's Initials:  _CM_

## ALLONGE

This Allonge is affixed to, and is hereby made a part of, that certain Note, dated October 24, 2019, in the original principal amount of $138,000.00 ("Note"), made by AAA REAL ESTATE INVESTMENT SERVICES LLC, a Florida limited liability company, for the benefit of OPTIMUS CAPITAL, INC., a California corporation ("Assignor"), and evidences the endorsement of the Note by Assignor as provided in that certain Master Loan Sale Agreement, dated May 23, 2018, by and between Assignor and the endorsee hereon ("Agreement"), to wit:

The Note is hereby made PAYABLE TO THE ORDER OF PS FUNDING, INC., a Delaware corporation, at 2121 Park Place, Suite #250, El Segundo, CA 90245, without recourse subject to the Agreement.

Dated: October 24, 2019

ASSIGNOR:

OPTIMUS CAPITAL, INC.,
a California corporation

By: _____
Name: _____ Maksim Boyko
Title: _____ CEO

1

<u>ALLONGE</u>

This Allonge is affixed to, and is hereby made a part of, that certain Note, dated October 24, 2019, in the original principal amount of $138,000.00 ("Note"), made by AAA REAL ESTATE INVESTMENT SERVICES LLC, a Florida limited liability company, for the benefit of OPTIMUS CAPITAL, INC., a California corporation, and evidences the endorsement of the Note by PS FUNDING, INC., a Delaware corporation ("Assignor") as provided in that certain Master Loan Sale Agreement, dated June 11, 2019, by and between Assignor and the endorsee hereon, to wit:

The Note is hereby made PAYABLE TO THE ORDER OF _____ _____

_____

_____

_____, without recourse.

Dated: _____, 20___

ASSIGNOR:

PS FUNDING, INC.,
a Delaware corporation

By: _____

Name:     Daniel Graham

Title:     Vice President

PS ID
Property Address: 1160 E Edgewood Dr, Lakeland, FL 33803

INSTR # 2019236201
BK 11032 Pgs 2134-2145 PG(s)12
11/06/2019 01:45:48 PM
STACY M. BUTTERFIELD,
CLERK OF COURT POLK COUNTY
RECORDING FEES 103.50
MTG DOC 483.00
INTANGIBLE 276.00

PREPARED BY AND RECORDING REQUESTED BY:

OPTIMUS CAPITAL, INC.
1545 River Park Dr, Suite 300
Sacramento, CA 95815

AND WHEN RECORDED MAIL TO:

PS FUNDING, INC.
2121 Park Place, Suite 250
El Segundo, CA 90245
Attn: Closing Department

_____

(Space Above for Recorder's Use)

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Security Instrument (as hereinafter defined) serves as a Fixture Filing under the Florida Uniform Commercial Code (the "Uniform Commercial Code").

### DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Security Instrument and/or the corresponding Loan Documents (as hereinafter defined) are defined below.

(A)    "**Borrower**" is AAA REAL ESTATE INVESTMENT SERVICES LLC, a Florida limited liability company. Borrower is the mortgagor under this Security Instrument.

(B)    "**Lender**" is OPTIMUS CAPITAL, INC., a California corporation, its successors and assigns. Lender's address is 1545 River Park Dr, Suite 300, Sacramento, CA 95815. Lender is the mortgagee under this Security Instrument.

(C)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D)    "**Loan Agreement**" means that certain Loan Agreement dated October 24, 2019, between

Security Instrument - Page 1 of 9
Loan ID
Property Address: 1160 E Edgewood Dr, Lakeland, FL 33803

RECORDED ELECTRONICALLY
ID 2019236201 County Polk
Date 11 Dec 19 Time 1:45 PM
simplifile    www.simplifile.com    800 460 5657

PREPARED BY AND RECORDING REQUESTED BY:

OPTIMUS CAPITAL, INC.
1545 River Park Dr, Suite 300
Sacramento, CA 95815

AND WHEN RECORDED MAIL TO:

PS FUNDING, INC.
2121 Park Place, Suite 250
El Segundo, CA 90245
Attn: Closing Department

_____

(Space Above for Recorder's Use)

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Security Instrument (as hereinafter defined) serves as a Fixture Filing under the Florida Uniform Commercial Code (the "Uniform Commercial Code").

<u>DEFINITIONS</u>

In addition to the capitalized terms defined where used, words used in multiple sections of this Security Instrument and/or the corresponding Loan Documents (as hereinafter defined) are defined below.

(A)    "**Borrower**" is AAA REAL ESTATE INVESTMENT SERVICES LLC, a Florida limited liability company. Borrower is the mortgagor under this Security Instrument.

(B)    "**Lender**" is OPTIMUS CAPITAL, INC., a California corporation, its successors and assigns. Lender's address is 1545 River Park Dr, Suite 300, Sacramento, CA 95815. Lender is the mortgagee under this Security Instrument.

(C)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D)    "**Loan Agreement**" means that certain Loan Agreement dated October 24, 2019, between

Borrower and Lender, the terms of which are incorporated herein by this reference.

(E)    **"Loan Documents"** means collectively the Loan Agreement, Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(F)    **"Note"** means the promissory note signed by Borrower and dated October 24, 2019. The Note states that Borrower owes Lender One Hundred Thirty Eight Thousand and 0/100 Dollars (U.S. $138,000.00) and any additional amounts advanced pursuant to this Security Instrument and other Loan Documents, plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than November 1, 2020 (the **"Maturity Date"**).

(G)    **"Property"** means the real property described in Exhibit A to this Security Instrument, and includes any improvements thereon.

This Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the **"Security Instrument"**) made October 24, 2019, among AAA REAL ESTATE INVESTMENT SERVICES LLC, a Florida limited liability company (the **"Borrower"**), as mortgagor, whose address is 1085 Morse Blvd #110, Winter Park, FL 32789, and OPTIMUS CAPITAL, INC., a California corporation (together with its successors and assigns, collectively, the **"Lender"**), as mortgagee, whose address is 1545 River Park Dr, Suite 300, Sacramento, CA 95815.

WITNESSETH

THAT BORROWER IRREVOCABLY GRANTS, CONVEYS, BARGAINS, TRANSFERS AND ASSIGNS TO LENDER THAT PROPERTY IN POLK COUNTY, FL, DESCRIBED AS:

See Legal Description attached as Exhibit A and incorporated herein by reference.

Street Address: 1160 E Edgewood Dr, Lakeland, FL 33803

TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Lender by the provisions set forth below to collect and apply such rents, issues and profits (collectively, the "Property"). For the Purpose of Securing: 1. Performance of each agreement of Borrower incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by a promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $138,000.00 executed by Borrower in favor of Lender. 3. Payment of such further sums as the then record owner of the Property hereafter may borrow from Lender, when evidenced by another note (or notes) reciting it is so secured. 4. All obligations under the Loan Agreement.

A default under any other security instrument securing the above-referenced promissory note shall constitute a default under this Security Instrument as well.

To protect the security of this Security Instrument, Borrower agrees:

(1)    That Borrower is lawfully seised of the estate hereby conveyed and has the right to

mortgage, grant and hypothecate the Property and that such Property is unencumbered, except for encumbrances of record.    Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record. Borrower further agrees that Borrower will observe and perform said provisions; and that the reference to the Property, obligations, and parties in said provisions shall be construed to refer to the Property, obligations and parties set forth in this Security Instrument.

(2)    To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

(3)    To provide, maintain and deliver to Lender fire insurance satisfactory to and with loss payable to Lender and Lender listed as additional insured, as more particularly set forth in this Security Instrument. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured herein and in such order as Lender may determine or at option of Lender the entire amount so collected or any part hereof may be released to Borrower. Such application or release shall not cure or waive any default or notice of default herein under or invalidate any act done pursuant to such notice.

(4)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Lender; and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Lender may appear, and in any suit brought by Lender to record this Security Instrument.

(5)    To not allow any additional liens to attach to the Property, regardless if the liens are junior to this Security Instrument, unless Borrower obtains prior written consent from Lender. Borrower must provide Lender with an inter-creditor or subordination agreement satisfactory to Lender, in Lender's sole and absolute discretion.

(6)    To pay; at least ten (10) days before delinquency all taxes, dues, and assessments affecting the Property, including but not limited to, condominium, planned unit development, and association dues; assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or a part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Security Instrument.

Should Borrower fail to make any payment or to do any act as herein provided, then Lender, but without obligation to do and without notice to or demand upon Borrower and without releasing Borrower from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Lender being authorized to enter upon the Property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the rights or powers of Lender; pay, purchase, contest or compromise

any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(7)   To pay immediately and without demand all sums so expended by Lender, with interest from date of expenditure at the maximum amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Lender not to exceed the maximum allowed by law at the time when said statement is demanded.

(8)   That any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(9)   That by accepting payment of any sum secured hereby after its due date, Lender does not waive his right either to require prompt payment when due of all other sums so secured or to declare a default for failure so to pay.

(10)   That at any time or from time to time, without liability therefore and without notice, upon written request of Lender and presentation of this Security Instrument and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Lender may; release any part of the Property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(11)   That upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Security Instrument and said Note to Lender for cancellation and retention and upon payment of its fees, Lender shall release, without warranty, the Property held hereunder. The recitals in such RELEASE of any matters or facts shall be conclusive proof of the truthfulness thereof. The Lender in such release may be described as "The person or persons legally entitled thereto". Five years after issuance of such full RELEASE, Lender may destroy said Note and this Security Instrument (unless directed in such request to retain them).

(12)   That as additional security, Borrower hereby gives to and confers upon Lender the right, power and authority during the continuance of this Security Instrument, to collect the rents, issues and profits of the Property, reserving unto Borrower the right, prior to any default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Lender may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured enter upon and take possession of the Property or any part thereof, in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonable attorneys' fees, upon the indebtedness secured hereby, and in such order as Lender may determine. The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or

notice of default hereunder or invalidate any act done pursuant to such notice.

(13)     That upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, under the Note secured hereby, or under the Loan Agreement, Lender may declare all sums secured hereby immediately due and payable by delivery to Lender of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Lender shall cause to be filed for record.

(14)     That this Security Instrument applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including pledges of the note secured hereby whether or not named as Lender herein.  In this Security Instrument, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(15)     Borrower shall, at Borrower's expense, maintain in force fire and extended coverage insurance in any amount of not less than the full replacement value of any building which may exist on the Property, with loss payable to Lender.  Borrower shall provide fire insurance protection on Borrower's furniture, fixtures and personal property on the Property in an amount equal to the full replacement value thereof, and promises that any insurance coverage in this regard will contain a waiver of the insurers' right of subrogation against Lender.  In addition, Borrower shall, at Borrower's expense, maintain in force policies of liability insurance and, if applicable, flood insurance, with Lender as loss payee and as an additional insured thereunder, insuring Borrower against all claims resulting from the injury to or the death of any person or the damage to or the destruction of any property belonging to any person by reason of Lender's interest hereunder or the use and occupancy of the Property by Borrower.  Such insurance shall be in the following amounts:  (1) $1,000,000.00 combined single limit liability insurance covering property damage and bodily injury; and (2) flood insurance in an amount equal to the replacement cost of the Property is required if the collateral is located in a flood zone.  At least thirty (30) days prior to the expiration of a policy, Borrower shall deliver to Lender a renewal policy in a form satisfactory to Lender.  If Borrower obtains any other insurance on the Property, such insurance shall name the Lender as additional insured and loss payee thereunder.

(16)     If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), or a lien or encumbrance is created upon the Property, voluntarily or involuntarily, or if Borrower shall file or have filed against it and/or the Property any proceeding for relief of debtors under the United States Bankruptcy Code, in each case without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(17)     Lender may make or cause to be made reasonable entries upon and inspections of the Property securing this Security Instrument.

(18)     Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property securing this Security Instrument or any part thereof and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender. Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Security Instrument, whether or not then due, in the order of application set forth in paragraph three (3) hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to Principal (as defined in the Note) shall not extend or postpone the due date of the monthly installments referred to in Section 3 of the Note or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

(19)     This Security Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Security Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Security Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Security Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. For purposes of filing and recording this Security Instrument in, among other places, the real estate records of the county in which the Property is located, the following information is included: (i) the Borrower shall be deemed the "Debtor" with the address set forth for the Borrower on the first page of this Security Instrument which the Borrower certifies is accurate, (ii) the Lender shall be deemed to be the "Secured Party" with the address set forth for the Lender on the first page of this Security

Instrument and shall have all of the rights of a secured party under the Uniform Commercial Code, (iii) this Security Instrument covers goods which are or are to become fixtures, (iv) the name of the record owner of the land is Borrower, (v) if Borrower is an entity, the organizational identification number of Borrower is L18000010140, and the Borrower is organized under the laws of Florida. Upon Borrower's breach of any covenant, representation, warranty or agreement of Borrower contained in this Security Instrument, including the covenants to pay when due all sums secured by this Security Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in this Security Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in this Security Instrument.

(20)    Any default under this Security Instrument shall constitute a default under all promissory notes and security instruments Borrower has executed in favor of Lender. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave intentionally or materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's use of the Property solely for business and/or commercial purposes.

(21)    State-Specific Provisions. State specific provisions, if any, are outlined on Exhibit B attached hereto and incorporated herein. In the event of any inconsistencies between the terms and conditions of this Section and any other terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

(22)    Indemnity. The Borrower agrees to indemnify Lender, each legal entity, if any who controls the Lender and each of their respective directors, officers and employees (each an "Indemnified Party", collectively the "Indemnified Parties"), and to hold each Indemnified Party harmless from and against, any and all claims, damages, losses, liabilities and expenses (including all reasonable fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Borrower), in connection with or arising out of the matters referred to in this Security Instrument or in the other Loan Documents, whether (a) arising from or incurred in connection with any breach of a representative, warranty or covenant by the Borrower, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's willful misconduct. The indemnity agreement contained in this Section shall survive the termination of this Security Instrument, payment of any Loan and assignment of any rights hereunder.

(23)    Wherever possible, each provision of this Security Instrument shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Security Instrument shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Instrument.

[SIGNATURE PAGE FOLLOWS]

The undersigned Borrower requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him/her at his/her address hereinbefore set forth.

**WAIVER OF JURY TRIAL. THE BORROWER IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS SECURITY INSTRUMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS SECURITY INSTRUMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE BORROWER ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

**The Borrower acknowledges that it has read and understood all the provisions of this Security Instrument, including the waiver of jury trial, and has been advised by counsel as necessary or appropriate.**

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

BORROWER:

AAA REAL ESTATE INVESTMENT
SERVICES LLC,
a Florida limited liability company

By: _____
Name:   Camilo Mendoza
Title:   Member

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _Florida_ )
) ss
COUNTY OF _Orange_ )

On _October 28 / 19_, before me, _Andres Villafuerte_, a Notary Public, personally appeared _Carlo Ventura – Member_
<span style="font-size:smaller">(Insert name and title exactly as they appear on signature page)</span>

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _FL_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public State of Florida
Andres Villafuerte
My Commission FF 987213
Expires 04/28/2020

_____
Notary Public                                                                    (Seal)

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

Security Instrument
Loan ID:
Property Address: 1160 E Edgewood Dr, Lakeland, FL 33803

## EXHIBIT A

### DESCRIPTION OF PROPERTY

Lot 971, CLEVELAND HEIGHTS SUBDIVISION UNIT NO. 1, according to the map or plat thereof as recorded in Plat Book 8, Page 26, Public Records of Polk County, Florida

## EXHIBIT B

### FLORIDA STATE SPECIFIC PROVISIONS

**Section 21.1**    Inconsistencies.    In the event of any inconsistencies between the terms and conditions of this Section and the terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

**Section 21.2**    Attorneys' Fees.    As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**Section 21.3**    Homestead Waiver.    Borrower relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Borrower waives any right of exemption as to the Property.

**Section 21.4**    Choice of Law.    Florida law shall exclusively govern the enforcement and interpretation of this Security Instrument.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

INSTR # 2019236202
BK 11032 Pgs 2146-2149 PG(s)4
11/06/2019 01:45:48 PM
STACY M. BUTTERFIELD,
CLERK OF COURT POLK COUNTY
RECORDING FEES 35.50

RECORDING REQUESTED & PREPARED BY:

PS Funding, Inc.
Kayley Kim, Esq.
2121 Park Place, Suite 250
El Segundo, CA 90245

WHEN RECORDED RETURN TO:

PS Funding, Inc.
2121 Park Place, Suite 250
El Segundo, CA 90245
Attn: Closing Department

Property Address: 1160 E Edgewood Dr, Lakeland, FL 33803

---

## ASSIGNMENT OF MORTGAGE

This ASSIGNMENT OF MORTGAGE ("Assignment") is made by OPTIMUS CAPITAL, INC., a California corporation, whose address is 1545 River Park Dr, Suite 300, Sacramento, CA 95815 ("Assignor"), to PS FUNDING, INC., a Delaware corporation, whose address is 2121 Park Place, Suite 250, El Segundo, CA 90245 ("Assignee").

FOR VALUE RECEIVED, Assignor hereby sells, grants, assigns, and transfers to Assignee any and all of its right, title and interest in and to that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated October 24, 2019, in the original principal amount of $138,000.00, made by AAA REAL ESTATE INVESTMENT SERVICES LLC, a Florida limited liability company, for the benefit of Assignor ("Security Instrument"), and recorded concurrently herewith in the Official Records of Polk County, FL, and as a lien on that certain real property described on Exhibit A, attached hereto and made a part hereof.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under the foregoing Security Instrument.

[SIGNATURE PAGE FOLLOWS]

.

1

IN WITNESS WHEREOF, this Assignment is made to be effective as of the date written below.

Dated: October 24, 2019

ASSIGNOR:

OPTIMUS CAPITAL, INC.,
a California corporation

By: _____

Name: _____ *Maksim Boyko* _____

Title: _____ *CEO* _____

2

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _California_ )

COUNTY OF _Sacramento_ )  ss
)

On _10·29·2019_ , before me, _Catrina Homburg_ , a Notary Public,
personally appeared _Maksim Boyko, CEO_
<span style="font-size:smaller">(Insert name and title exactly as they appear on signature page)</span>

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _California_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Catrina Hornburg_
Notary Public                                                                                     (Seal)

CATRINA HORNBURG
Commission No. 2187592
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
Commission Expires April 1, 2021

3

EXHIBIT A TO
ASSIGNMENT OF MORTGAGE
LEGAL DESCRIPTION OF PROPERTY

Lot 971, CLEVELAND HEIGHTS SUBDIVISION UNIT NO. 1, according to the map or plat
thereof as recorded in Plat Book 8, Page 26, Public Records of Polk County, Florida

4

PS ID
Property Address: 1160 E Edgewood Dr, Lakeland, FL 33803

INSTR # 2021030191
BK 11568 Pg 1620 PG(s)1
02/05/2021 07:51:55 AM
STACY M. BUTTERFIELD,
CLERK OF COURT POLK COUNTY
RECORDING FEES 10.00

PREPARED BY:
KAYLA STANTON
FIRST AMERICAN MORTGAGE SOLUTIONS
1795 INTERNATIONAL WAY
IDAHO FALLS, ID 83402
AND WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS
1795 INTERNATIONAL WAY
IDAHO FALLS, ID 83402
**FLORIDA**
COUNTY OF POLK
LOAN NO.

# ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **PS FUNDING, INC. BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING ITS ATTORNEY IN FACT** located at **55 BEATTIE PLACE SUITE 110 MS#001, GREENVILLE, SC 29601**, "Assignor," does hereby grant, bargain, assign, transfer and set over unto **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS DELAWARE TRUSTEE FOR FIDELITY & GUARANTY LIFE MORTGAGE LOAN TRUST 2018-1** located at **60 LIVINGSTON AVE EP-MN-WS3D, ST PAUL, MN 55107**, "Assignee," its successors and assigns, that certain indenture of Mortgage bearing the date of **OCTOBER 24, 2019** executed by **AAA REAL ESTATE INVESTMENT SERVICES LLC, A FLORIDA LIMITED LIABILITY COMPANY**, Mortgagor, and recorded on **NOVEMBER 06, 2019** in Book **11032** at Page **2134** as Clerk's File No. **2019236201** in Public Records in the Office of the Clerk of the Circuit Court for **POLK** County, State of **FLORIDA**, upon the following described property:

**AS DESCRIBED IN SAID MORTGAGE**

TOGETHER WITH all rights accrued or to accrue under said Mortgage.

TO HAVE AND TO HOLD the same, unto the said Assignee, its successors and assigns, forever.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on ____**JAN 2 8 2021**____.
**PS FUNDING, INC. BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING ITS ATTORNEY IN FACT**

KAYLA STANTON, SUPERVISOR

STATE OF **SOUTH CAROLINA**          COUNTY OF **GREENVILLE** ) ss.
On ____**JAN 2 8 2021**____, before me, **Brittany S. Campbell**, personally appeared **KAYLA STANTON** known to me to be the **SUPERVISOR** of **PS FUNDING, INC. BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING ITS ATTORNEY IN FACT** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Brittany S. Campbell (COMMISSION EXP. _____ )
NOTARY PUBLIC

BRITTANY S. CAMPBELL
Notary Public - State of South Carolina
My Commission Expires
07/14/2030

**Page 1 of 1**

# EXHIBIT "B"

Skip to main content
Home Page » Return To Search Results

Change Browser Language

## Parcel Details:

 TAX EST   PRT CALC   PRC   HTML PRC   TRIM   HTML TRIM  TAX BILL

### Owners

| | |
|---|---|
| REAL ESTATE INVESTMENT SERVICES LLC | 100% |

### Mailing Address

| | |
|---|---|
| Address 1 | **1085 W MORSE BLVD** |
| Address 2 | |
| Address 3 | **WINTER PARK FL 32789-3795** |

### Site Address

| | |
|---|---|
| Address 1 | **1160 EDGEWOOD DR E** |
| Address 2 | |
| City | **LAKELAND** |
| State | **FL** |
| Zip Code | **33803** |

### Parcel Information

| | |
|---|---|
| Neighborhood | **321636.00** Show Recent Sales in this Neighborhood |
| Subdivision | **CLEVELAND HEIGHTS UNIT NO 1** |
| Property (DOR) Use Code | **SFR up to 2.49 AC (Code: 0100)** |
| Acreage | **0.16** |
| Taxing District | **LAKELAND/SWFWMD/LKLD MASS (Code: 91510)** |
| Community Redevelopment Area | **NOT IN CRA** |

### Property Desc

**DISCLAIMER:** This property description is a condensed version of the original legal description recorded in the public records. It does not include the section, township, range, or the county where the property is located. It is a description of the ownership boundaries only and does not include easements or other interests of record. The property description should not be used when conveying property. The Property Appraiser assumes no responsibility for the consequences of inappropriate uses or interpretations of the property description. No warranties, expressed or implied, are provided for the data herein, its use, or its interpretation.

***DEED APPEARS IN ERROR*** CLEVELAND HEIGHTS UNIT NO 1 PB 8 PGS 26 TO 28 LOT 971

### Deed Letter

Deed Letter  PDF HTML

### Area Map



### Recorded Plat

Visit the Polk County Clerk of Courts website to view the Recorded Plat for this parcel

Note: Some plats are not yet available on the Clerk's website. The site contains images of plats recorded on 01/05/1973 (beginning with book 058 Page 020) or later. For information on Plats recorded before 01/05/1973 (Book 058 Page 019 or less) please contact the Polk County Clerk's Office.

**Mapping Worksheets (plats) for 242830**

Mapping Worksheet    Mapping Worksheet Printable PDF
HTML (opens in new
tab)

## Sales History

**Important Notice:** If you wish to obtain a copy of a deed for this parcel, click on the blue OR Book/Page number. Doing so will cause you to leave the Property Appraiser's website and access the Polk County Clerk of the Circuit Court's Official Records Search. Once the document opens, click the printer icon to print the document. If you have any issues opening the document once you have met all the listed system requirements, please contact the Clerk's office at (863)534-4000 and ask to speak to an IT staff member. If the Book/Page number does not have a blue link to Official Records, the deed may not be available through the online records of the Clerk of the Circuit Court. In order to obtain a copy of the deed you will need to contact the Clerk of the Circuit Court Indexing Department at 863-534-4516. If the Type Inst is an "R", the document is not available through the Clerk of the Circuit Court's Official Records Search. Please contact the Property Appraiser to order "R" type instruments.

| OR Book/Page | Date | Type Inst | Vacant/ Improved | Grantee | Sales Price |
|---|---|---|---|---|---|
| 10721/02197 | 01/2019 | C | I | REAL ESTATE INVESTMENT SERVICES LLC | $0 |
| 10689/00500 | 12/2018 | Q | I | FVA HOMES LLC | $100 |
| 10613/01055 | 08/2018 | W | I | AAA REAL ESTATE INVESTMENTS SERVICES LLC | $99,900 |
| 10607/01909 | 08/2018 | W | I | GOLD LABEL HOLDINGS LLC | $89,900 |
| 10481/01721 | 05/2018 | M | I | DIBBLE TIMOTHY A | $0 |
| 4159/1857 | 12/1998 | M | I | DIBBLE MARGARET L | $100 |
| | 01/1950 | | E | | $100 |

## Exemptions

**Note:** The drop down menus below provide information on the amount of exemption applied to each taxing district. The HX—first $25,000 homestead exemption may be allocated to one or more owners. The HB –second $25,000 amended homestead exemption reflects the name of the first owner only.

| Code | Bld. # | Description | % Ownership | Renew Cd | Year Name | Note | Value |
|---|---|---|---|---|---|---|---|

If you have a Senior Exemption(Additional Homestead Exemption for Persons 65 and Older): For the 2021 tax year, the allowable total household adjusted gross income received during 2020 could not exceed $31,100. If your total household adjusted gross income exceeded this limit, YOU MUST NOTIFY THIS OFFICE. Receiving no notification from the qualified senior will be considered a sworn statement, under penalty of perjury, that the income does not exceed the limit. Improperly claiming any exemption could result in a lien against your property. If you would like to receive a notice of renewal electronically, please send us an email at paoffice@polk-county.net with your name, property address, and confirmation of your request.

## Buildings

## BUILDING 1 (SF - Single Family)

### Building Characteristics        1160 EDGEWOOD DR

**Total Under Roof:** 1,354 sqft
**Living Area (as originally constructed):** 1,354 sqft
**Actual Year Built:** 1940
**Effective Year:** 1940

**Building BAS Note:** The base area (living area or square foot living area) of a building is the originally designed building footprint / plan of the cooled and heated

area of the building.  In most cases, a base area will remain constant throughout the life of the building.  A base area can be converted to a subarea (Example: A portion of the base is "cut-out" and used as a garage or porch); It is not, however, standard appraisal practice to convert a subarea to a base area unless there was an error when initially entering the data.



| Element | Units | Information |
|---|---|---|
| STYLE | | SINGLE FAMILY |
| UNITS | | 1 UNIT |
| STORY HEIGHT INFO ONLY | | 1 Story for info only |
| SUBSTRUCT | | Continuous Wall |
| FRAME / CONST TYPE | | WOOD FRAME |
| EXTERIOR WALL | | VINYL SIDING |
| ROOF STRUCTURE | | GABLE-SHINGLE |
| Room: Bedroom | 2 | |
| Room: Full Bath | 1 | |
| Room: Half Bath | 0 | |
| Fireplace | N | |
| Cntrl Heating / AC | N | |

## Building Subareas

**Building Sub Area Note:**  A sub area is an individual component of a building that may or may not be cooled/heated.  The percent in a subarea description is the percent of the base rate applied to the value of the sub area.  (Example: UGR UNFINISHED GARAGE 50% indicates this sub area is valued at 50% of the base area rate); If a sub area changes over time, the contributory value may also change.

| Code | Description | Heated | Total |
|---|---|---|---|
| BAS | BASE AREA | Y | 1,046 |
| FEP | FEP FINISHED ENCL PORCH 90% | Y | 308 |
| **Total Under Roof** | | | **1,354 ft²** |
| **Total Living Area** | | | **1,354 ft²** |

## PERMITS

The Polk County Property Appraiser's Office does not issue or maintain permits.   Please contact the appropriate permit issuing agency to obtain information.   This property is located in the **LAKELAND/SWFWMD/LKLD MASS**  taxing district. The beginning of the description indicates permit agency (UNINCORP is an abbreviation for Unincorporated **POLK COUNTY**).

## Land Lines

| LN | Land Dscr | Ag/GreenBelt | Land Unit Type | Front | Depth | Units |
|---|---|---|---|---|---|---|
| 1 | * Residential | N | S | 0 | 0 | 7,104.00 |

* For Zoning/Future Land Use contact Polk County or the Municipality the parcel is located in.

> **NOTICE: All information ABOVE this notice is current (as of Wednesday, August 18, 2021 at 2:14:48 AM).  All information BELOW this notice is from the 2021 Tax Roll, except where otherwise noted.**

## Value Summary (2021)

| Desc | Value |
|---|---|
| Land Value | $26,285 |
| Building Value | $88,062 |
| Misc. Items Value | $0 |

| | |
|---|---:|
| Land Classified Value | $0 |
| Just Market Value | $114,347 |
| *Cap Differential and Portability | $2,521 |
| Agriculture Classification | $0 |
| Assessed Value | $111,826 |
| Exempt Value (County) | $0 |
| Taxable Value (County) | $111,826 |

*This property contains a Non Homestead Cap with a differential of $2,521.

## Values by District (2021)

| District Description | Proposed Tax Rate | Assessed Value | Proposed Assessed Taxes | Exemption | Proposed Tax Savings | Taxable Value | Proposed Taxes |
|---|---|---|---|---|---|---|---|
| BOARD OF COUNTY COMMISSIONERS | 6.899000 | $111,826 | $771.49 | $0 | $0.00 | $111,826 | $771.49 |
| POLK COUNTY SCHOOL BOARD - STATE | 3.581000 | $114,347 | $409.48 | $0 | $0.00 | $114,347 | $409.48 |
| POLK COUNTY SCHOOL BOARD - LOCAL | 2.248000 | $114,347 | $257.05 | $0 | $0.00 | $114,347 | $257.05 |
| CITY OF LAKELAND | 5.464400 | $111,826 | $611.06 | $0 | $0.00 | $111,826 | $611.06 |
| SOUTHWEST FLA WATER MGMT DIST | 0.253500 | $111,826 | $28.35 | $0 | $0.00 | $111,826 | $28.35 |
| LAKELAND MASS TRANSIT | 0.500000 | $111,826 | $55.91 | $0 | $0.00 | $111,826 | $55.91 |
| | | Assessed Taxes: | $2,133.34 | Tax Savings: | $0.00 | Total Taxes: | $2,133.34 |

## Taxes

| Desc | Last Year | 2021 Proposed |
|---|---:|---:|
| Taxing District | LAKELAND/SWFWMD/LKLD MASS (Code: 91510) | LAKELAND/SWFWMD/LKLD MASS (Code: 91510) |
| Millage Rate | 19.0653 | 18.9459 |
| Ad Valorem Assessments | $1,975.87 | $2,133.34 |
| Non-Ad Valorem Assessments | $0.00 | $0.00 |
| **Total Taxes** | **$1,975.87** | **$2,133.34** |

**Your final tax bill may contain Non-Ad Valorem assessments which may not be reflected on this page, such as assessments for roads, drainage, garbage, fire, lighting, water, sewer, or other governmental services and facilities which may be levied by your county, city or any other special district.  Visit the Polk County Tax Collector's site for Tax Bill information related to this account.  Use the Property Tax Estimator to estimate taxes for this account.**

## Prior Year Final Values

The Final Tax Roll is the 1st certification of the tax rolls by the Value Adjustment Board, per Florida Statute 193.122(2), F.S. This is the date all taxable property and tax rolls are certified for collection to the Tax Collector. Corrections made after this date are not reflected in the Final Tax Roll Values.

### 2020

| | |
|---|---:|
| Land Value | $24,864.00 |
| Building Value | $83,149.00 |

| | |
|---|---|
| Misc. Items Value | $0.00 |
| Just Value (Market) | $108,013.00 |
| SOH Deferred Val | $6,353.00 |
| Assessed Value | $101,660.00 |
| Exempt Value (County) | $0.00 |
| Taxable Value (County) | $101,660.00 |
| **2019** | |
| Land Value | $24,864.00 |
| Building Value | $67,554.00 |
| Misc. Items Value | $0.00 |
| Just Value (Market) | $92,418.00 |
| SOH Deferred Val | $0.00 |
| Assessed Value | $92,418.00 |
| Exempt Value (County) | $0.00 |
| Taxable Value (County) | $92,418.00 |
| **2018** | |
| Land Value | $23,443.00 |
| Building Value | $65,947.00 |
| Misc. Items Value | $0.00 |
| Just Value (Market) | $89,390.00 |
| SOH Deferred Val | $0.00 |
| Assessed Value | $89,390.00 |
| Exempt Value (County) | $0.00 |
| Taxable Value (County) | $89,390.00 |
| **2017** | |
| Land Value | $21,312.00 |
| Building Value | $60,899.00 |
| Misc. Items Value | $0.00 |
| Just Value (Market) | $82,211.00 |
| SOH Deferred Val | $47,990.00 |
| Assessed Value | $34,221.00 |
| Exempt Value (County) | $25,000.00 |
| Taxable Value (County) | $9,221.00 |

**DISCLAIMER:**

The Polk County Property Appraiser makes every effort to produce and publish the most current and accurate information possible. The PCPA assumes no responsibility for errors in the information and does not guarantee that the data are free from errors or inaccuracies. Similarly the PCPA assumes no responsibility for the consequences of inappropriate uses or interpretations of the data. No warranties, expressed or implied, are provided for the data herein, its use, or its interpretation. Utilization of the search facility indicates understanding and acceptance of this statement by the user.

Last Updated: Wednesday, August 18, 2021 at 2:14:48 AM

**EXHIBIT "C"**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

IN RE:                                                    **CASE NO.: 6:21-bk-02101-LVV**
                                                                              **CHAPTER 7**

**AAA Real Estate Investment Services,**

**LLC,**

      **Debtor.**

_____/

## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

THIS CASE came on consideration without a hearing on NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for U.S. BANK, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR FIDELITY & GUARANTY LIFE MORTGAGE TRUST 2018-1's ("Secured Creditor") Motion for Relief from Stay (Docket No. ____). No appropriate response has been filed in accordance with Local Rule 2002-4. Accordingly, it is:

1

**ORDERED:**

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured Creditor's interest in the following property located at 1160 E Edgewood Dr, Lakeland, FL 33803, in Polk County, Florida, and legally described as:

   > Lot 971, CLEVELAND HEIGHTS SUBDIVISION UNIT NO. 1, according to the map or plat thereof as recorded in Plat Book 8, Page 26, Public Records of Polk County, Florida

3. The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor shall not seek an *in personam* judgment against Debtor(s).

4. Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5. The Secured Creditor's request to waive the 14-day stay period pursuant to Bankruptcy Rule 4001(a)(3) is granted.

6. Attorneys' fees in the amount of $345.00 and costs in the amount of $188.00 are awarded for the prosecution of this Motion for Relief from Stay, but are not recoverable from the Debtor(s) or the Debtor(s)' Bankruptcy estate.

###

Attorney, Christopher P. Salamone, is directed to serve a copy of this order on interested parties that do not receive electronic notice via CM/ECF and file a proof of service within 3 days of entry of the order.

2